# EL PASO WATER COMPANY *v.* EL PASO.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE WESTERN DISTRICT OF TEXAS.

No. 238.    Submitted February 1, 1894. — Decided March 5, 1894.

In a suit in a Circuit Court by a water company, to which a municipal government has granted the exclusive right to supply it and its inhabitants with water for fifteen years, against the municipality to prevent it from establishing or maintaining other water works within the limits of the municipality until after the expiration of said period, it did not appear affirmatively that it was contemplated that the other works complained of were to go into operation until after the expiration of that period; and as it did not appear from the record that there was over $5000 in controversy, *held*, that this court had no jurisdiction.

THIS was an appeal from a decree of the Circuit Court of the United States for the Western District of Texas, sustaining a demurrer to the plaintiff's original and amended bills, and dismissing the same.    The facts as alleged in the bills were substantially these: By an ordinance passed May 7, 1881, the city council of the city of El Paso, Texas, assumed to grant "the sole and exclusive right, warrant and authority, for the period of fifteen years, to manufacture, sell and furnish water to the inhabitants of the city of El Paso, to both public and private buildings, and for irrigation within the corporate limits of said city," with "the sole and exclusive right, warrant, and authority for said period to lay pipes, mains, and conductors underneath the streets, alleys, lanes, and squares in said city, for the purpose of conducting water," and by a subsequent ordinance rented hydrants at a certain annual rent.    By certain assignments and transfers these rights became vested in the plaintiff, and in reliance thereon it expended a large sum of money, to wit, the sum of $150,000, in establishing its plant.    The substance of these ordinances, the acts of the plaintiff, and subsequent dealings between it and the city were stated at length in the bills, but the sum of the whole matter lay in the fact of the alleged exclusive right to supply water to the city for the term of fif-

teen years, and to occupy the streets for the purpose of laying mains, etc.

The wrong complained of was the passage of two ordinances in 1889 and 1890, approved by a vote of the people, authorizing the issue of $25,000 and $75,000, respectively, of the bonds of the city for the avowed and declared purpose on the part of the council of sinking artesian wells and constructing a system of water works to be owned and operated by said council for supplying water to said city and inhabitants, for all public and private purposes; and the relief prayed was that the city be enjoined from establishing, maintaining, or operating any water works within the limits of said city until the expiration of said period of fifteen years, and from selling or negotiating any bonds, or other securities, for that purpose.

It was also alleged that if the bonds are issued, the plaintiff will be compelled to pay taxes on its property for the interest on said bonds and to provide a sinking fund for the principal thereof, but the amount of the tax which will be thereby cast upon the plaintiff's property is not disclosed.

The appellee moved to dismiss the appeal for want of jurisdiction.

*Mr. Walter D. Davidge* and *Mr. Leigh Clark* for the motion.

*Mr. William Thompson* and *Mr. Maurice McKeag* opposing.

Mr. Justice Brewer, after stating the case, delivered the opinion of the court.

Probably the Circuit Court sustained the demurrer on the ground that under the constitution of the State of Texas, adopted in 1876, the attempt to grant exclusive rights in these matters was beyond the power of the city, and that, among other matters, is discussed at length by counsel in their respective briefs. That constitution (article 1, section 26) provides that " perpetuities and monopolies are contrary to the genius of a free government, and shall never be allowed." In the case of *Brenham* v. *The Brenham Water Works Co.*, 67 Texas, 542, the Supreme Court of the State, construing this provision, held

that a contract similar to that made with the plaintiff was inhibited by the constitution, and that neither the city council nor the state legislature had power to make or authorize such a contract.

We do not deem it necessary to consider the important constitutional question thus presented, for it does not appear from the record that there is over $5000 in controversy, as is necessary to give this court jurisdiction. The bill is filed by the plaintiff to protect its individual interests, and to prevent damage to itself. It must, therefore, affirmatively appear that the acts charged against the city, and sought to be enjoined, would result in its damage to an amount in excess of $5000. So far as respects the matter of taxes which, by the issue of bonds, would be cast upon the property of the plaintiff, it is enough to say that the amount thereof is not stated, nor any facts given from which it can be fairly inferred.

With regard to the claim of exclusive rights, there is no allegation in the bills of the time at which the city will, unless restrained, commence the operation of its contemplated system of water works, and thus interfere with the actual performance of its contract with the plaintiff so far as respects the supply of water. Every averment would be satisfied by proof that the city intended to begin the use of its proposed water works on the day before the expiration of the fifteen years. And the only distinct disclosure of damage in the bills, or by the affidavits filed in this court, is that resulting from an actual supply of water by the city and a failure to pay the plaintiff for the use of its hydrants. So far as the mere construction of water works is concerned, that of itself is no violation of the terms of this contract. The time for which the exclusive right, as claimed, was given, was fifteen years, and the city would be guilty of no breach of any obligations if, during the life of the contract, it proceeded to sink artesian wells, to establish water works, and put itself in condition to, in the future and after the termination of the fifteen years, supply water for all public and private purposes. Suppose that the very next day after the acceptance by the grantee of these franchises the city had commenced the work of sinking

artesian wells and establishing a system of water works, and had continued its labors in that direction during the entire life of the contract : that would have been no breach of its obligations to the plaintiff.   It might have affected pecuniarily the value of the plaintiff's plant in that it carried a strong intimation that the moment the fifteen years expired the city would itself engage in the work of supplying water, and thus take from the plaintiff its business.   So, preparations made by the city, at the time stated in the bills, to wit, 1889 and 1890, for the establishment of water works, may, and doubtless did, have some effect upon the value of the plaintiff's property, but the extent of the diminution of value thus caused is not alleged, and cannot be inferred.   The bills do not allege that the city in terms denies the validity of its agreement to pay rent for hydrants or otherwise, and the acts which they charge that the city is about to do are acts which the city may do consistently with the continuance of the contract, and as a mere matter of preparation for the discharge of a public duty after the termination of that contract.   Under these circumstances, we are of the opinion that it is not affirmatively disclosed by the record that the amount in controversy is a sum in excess of $5000, and, therefore, for want of jurisdiction in this court, the appeal must be

*Dismissed.*