STATE LIFE INS. CO. OF INDIANAPOLIS, IND., v. WICHITA COUNTY WATER IMPROVEMENT DIST. NO. 2 et al.

No. 364.

District Court, N. D. Texas, Wichita Falls Division.

April 7, 1937.

Kay & Akin, of Wichita Falls, Tex., for complainant.

A. H. Britain, of Wichita Falls, Tex., for respondents.

ATWELL, District Judge.

In 1927 Remington borrowed $8,000 from the Empire Mortgage Company and gave a deed of trust on 369 acres of land in Archer county to secure the note. In 1928 this note, so secured, was sold to the complainant. Remington defaulted, and the lands were sold under the deed of trust and bought in by the complainant on June 1, 1936. On February 6, 1928, Remington, after having given the deed of trust, agreed with the respondent, water improvement district, to have the land included in that district, which had theretofore been established, but to which Remington's land was not contiguous, in the sense that it abutted on the line of the district. It was about 1800 feet away. Remington stated in his application for the extension of the district to his lands that his lands were contiguous. The district expended approximately $700 in running a canal and water was made available. The lien on the land by reason of such availability amounts to $39.83 per acre for that portion which is irrigable and 7 cents for the nonirrigable part.

The original constitutional amendments which authorized the creation of such water districts provided that, "upon a vote of a two-thirds majority of resident property tax payers voting thereon who are qualified electors of such district or territory." (Const.Tex. art. 3, § 52.) The statutes (Vernon's Ann.Civ.St.Tex. art. 7622 et seq.) made in accordance with the constitutional authority finally gave the right to include in the district "contiguous" lands, provided water was sufficient. Likewise, a provision passed after complainant's rights were fixed authorized the addition of lands in the "vicinity" of the district.

Interesting virgin questions, notwithstanding State v. Bank of Mineral Wells (Tex.Civ.App.) 251 S.W. 1107, and Longenecker v. Ward County (Tex.Civ.App.) 8 S.W.(2d) 306, are raised by the complainant as to the right of the Legislature to exceed the authority given in the constitutional provision, and also as to the right of the Legislature to include lands in the "vicinity," as well as "contiguous" lands. It also asserts that the "vicinity" provision was passed after its interest was fixed; that its situation of peril is brought about by a voluntary private contract of its debtor, by reason of state provisions which are, in effect,

an impairment of its contract and deprives it of due process. It invokes both the Fifth and the Fourteenth amendments.

As tempting as may be the investigation of a proposition which denies the right of the debtor to voluntarily destroy a first lien, as distinguished from the power of the sovereignty, either municipal or state, to move forward in assessing for betterments to property or taxing for raising revenue, there is a preliminary study raised by the respondent which halts the court.

It claims that the court is without jurisdiction because the amount involved does not exceed $3,000. The complainant entered court on the theory, and the stipulation supports that value, that the land upon which its lien exists is worth $5,000, and that an unconstitutional lien, apparently valid, exists against it and it desires to remove that cloud. It has been stipulated between the parties that the tax liability accrued at the time of the filing of the suit was under $1,200, and that ultimately and finally it could not be over $1,700.

Does the value of the land upon which the cloud is asserted fix the jurisdiction?

In Texas a tax claim or lien constitutes a cloud upon the title. Galveston Gas Co. v. Galveston County, 54 Tex. 287, 291; Cassiano v. Ursuline Academy, 64 Tex. 673, 676; Day, etc., Co. v. State, 68 Tex. 526, 4 S.W. 865.

The national courts have the same rule, Rich v. Braxton, 158 U.S. 375, 377, 15 S. Ct. 1006, 39 L.Ed. 1022.

This last case dealt, not with a tax lien, but with a tax deed that had ripened from owed taxes. The case of Ogden City v. Armstrong, 168 U.S. 224, 225, 18 S.Ct. 98, 42 L.Ed. 444, supports the right of the owner to seek equitable relief against void assessments and to remove a cloud on the title by reason thereof.

In suits to quiet title the value of the land is always the amount in controversy. Greenfield v. United States Mortgage Co. (C.C.) 133 F. 784; McDaniel v. Traylor, 196 U.S. 415, 25 S.Ct. 369, 49 L.Ed. 533.

But there seems to be an equally well-marked doctrine which controls in tax cases. This doctrine was recognized by this court in Wichita County Improvement District v. Western Union Telegraph

836

Company, 22 F.(2d) 997.. It has been more recently exposed in ·Cook's Estate, Trustees v. Sheppard (D.C.) 8 F.Supp. 21, 25, a three-judge court case in the Southern District of Texas. The complainant there asserted the invalidity of a tax and pleaded that it cast a cloud upon the title to property.· With regard to the asserted cloud, it was observed that, if the law be unconstitutional, no cloud would be cast by it, citing Hannewinkle v. Georgetown, 15 Wall. 547, 21 L.Ed. 231. The writer then continued that, "assuming, however, that the effect of the statute is to cloud the title, the question then arises, To what extent is it clouded? As in the case of the lien, it is only affected to the extent of the unpaid tax. Such cloud as may be cast by the subjection of the property to future taxation is not the subject-matter of federal jurisdiction." The decision upon the cloud question is not quite as full as one would like to find it in order to be convinced of the correctness of the exception to the general rule. The case went to the Supreme Court and was affirmed, citing Healy v. Ratta, 292 U.S. 263, 54 S.Ct. 700, 78 L.Ed. 1248. The Healy Case did not involve the question that we are here talking about. It merely determined that the peddler's tax of $50 could not be augmented by the value of the complainant's business in order to come within the federal court jurisdiction. See, also, Grosjean v. Musser (C.C.A.) 74 F.(2d) 741; Kroger Grocery & Baking ·Co. v. Lutz (1936) 57 S.Ct. 215, 81 L.Ed. ——; Vicksburg, S. & P. R. Co. v. Nattin (D.C.) 51 F.(2d) 1061, affirmed in (C.C.A.) 58 F.(2d) 979.

 So it seems that the present trend is to see what makes the cloud. If that which makes the claimed cloud can be removed by the payment of·an amount that is beneath the national court jurisdiction, then it cannot be said that the amount in controversy exceeds that which would settle it.

That the controversy concerns an amount sufficient to give this jurisdiction is a real and substantial requirement. The object of a suit which concerns a collateral or an incidental issue is not sufficient. Washington & G. R. Co. v. Dist. of Columbia, 146 U.S. 227, 13 S.Ct. 64, 36 L. Ed. 951; Holt v. Indiana Mfg. Co., 176 U.S. 68, 20 S.Ct. 272, 44 L.Ed. 374; Colvin v. City of Jacksonville, 158 U.S. 456,

15 S.Ct. 866, 39 L.Ed. 1053; Pine v. East Bay Municipal Utility Dist. (C.C.A.) 16 F. (2d) 274; City of Pawhuska v. Midland Valley R. Co. (C.C.A.) 33 F.(2d) 487.

With these holdings in mind we are driven to the conclusion that the assertion of a cloud will be subjected to the scrutiny for cause and, if such cause appears to be a state or municipal tax, that the amount thereof will determine rather than the value of the thing against which it is imposed or asserted. This is in harmony with the trend of thinking for the prevention of the enlargement of national court jurisdiction over the functions of local authorities as to taxes.

One may not be wholly satisfied with the logic of the position, since it seems, to run counter to the well-established rule at first referred to. But it is in harmony with the determination of the courts to find out just exactly what is in controversy before holding jurisdiction.

The plea as to jurisdiction is sustained.